IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUNTER STOKES, | ) | CIVIL ACTION NO. 2:26-cv-256 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | Electronically Filed. |

<u>COMPLAINT IN A CIVIL ACTION</u>

COMES NOW, the Plaintiff, HUNTER STOKES, by and through his attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, ELIZABETH A. TUTTLE, ESQUIRE, AMANDA N. SHIELDS, ESQUIRE, and MASSIMO A. TERZIGNI, ESQUIRE, and hereby files this Complaint in a Civil Action as follows:

<u>JURISDICTION AND VENUE</u>

1.     This is an action for the redress of grievances and in vindication of civil rights guaranteed to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. § 1983.

2.     This action is brought against the Defendants for violating Plaintiff's rights under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

3.     Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction over Plaintiff's state law claim is also proper pursuant to 28 U.S.C.A § 1367.

4.     Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

PARTIES

5.      Plaintiff, Hunter Stokes, is an adult individual residing in Allegheny County, Pennsylvania.

6.      Defendant, City of Pittsburgh, is a Pennsylvania municipal corporation with offices located at 414 Grant Street, Pittsburgh, Pennsylvania 15219.

7.      The actions of the Defendant, as described herein, are part of an unlawful pattern and course of conduct intended to harm the Plaintiff.  All of the acts described below were committed by the Defendant with reckless disregard and/or deliberate indifference to the rights of the Plaintiff.  As a direct and proximate result thereof, Defendant violated the Plaintiff's federally protected rights, as described herein.

FACTUAL ALLEGATIONS

8.       Plaintiff has been employed by the Defendant's Department of Public Works as a truck driver since on or about December 15, 2023.

9.      Throughout the Plaintiff's employment, Plaintiff has made numerous good faith reports of safety concerns to his supervisors.  Specifically, Plaintiff has made good faith complaints that the Defendant's equipment, including Defendant's Department of Public Works trucks and other equipment, are damaged and/or unsafe to operate.

10.      Plaintiff repeatedly reported his safety concerns over the unsafe equipment, as described above, to his supervisors and/or foremen including, but not limited to a supervisor, John McCrory ("McCrory"), Foremen Jeff McMannus ("McMannus"), Craig Pollice ("Pollice") and Eric Pollice ("Pollice") and Deputy Director Bill Crean ("Crean").

11.      Defendant failed to address the Plaintiff's safety concerns and continued to force Plaintiff and other employees to operate its unsafe equipment, as described herein.

12.    Plaintiff believes, and therefore avers, that due to his complaints of safety concerns, Defendant treated Plaintiff less favorably than other similarly-situated employees and/or disciplined the Plaintiff for engaging in conduct for which it did not discipline other employees.

13.    As a result of Defendant's failure to address Plaintiff's safety concerns and the unsafe equipment, Plaintiff reported the unsafe working conditions to local news station, WPXI.

14.    Thereafter, on May 1, 2025, WPXI's Rick Earle ("Earle") reported that a "City of Pittsburgh employee is speaking out about the condition of the city vehicles," and that "He told Earle that when he gets into some of those city trucks, he says he's not only worried about his safety, but others around him."

15.    The WPXI news report included that Plaintiff made the following statements:

      a.  "I'm worried about someone possibly getting hurt or killed in the line of duty;" and

      b.  "I never thought working for the City of Pittsburgh trucks would be this bad. These trucks don't belong on the road.  I wouldn't drive them through a scrap yard."

16.    The aforementioned news report also stated, "The worker gave us pictures of rusted-out wheel wells, corrosion and rust under a truck, busted out tail lights, a torn and worn interior, and a salt truck that lost its wheels."

17.    Although Plaintiff's identity was not disclosed in the aforementioned news report, which was televised on a WPXI news broadcast and published online, Plaintiff believes, and therefore avers, that Defendant's management, including its foremen, supervisors, and/or directors, suspected and/or knew that Plaintiff was the "worker" featured in the news report.

18.    After the aforementioned news report, on or about June 8, 2025, Plaintiff was disciplined for allegedly not completing a task that was assigned to him.

19.     Plaintiff believes, and therefore avers, that this disciplinary action was in retaliation for Plaintiff's participation in the aforementioned news report because Plaintiff's supervisor assigned Plaintiff the task of completing an entire garbage route "as punishment" for not emptying a small number of garbage cans on a prior shift.  Notably, the route assigned to Plaintiff as punishment is typically split into sections among multiple employees.

20.     In a letter dated June 17, 2025, Defendant's Director of the Department of Public Works, Chris Hornstein ("Hornstein"), notified Plaintiff that he was suspended for engaging in an altercation with another employee.  The altercation occurred prior to Plaintiff's report to WPXI, on or about April 29, 2025, in which another employee used derogatory language relating to the Plaintiff's known learning disability and repeatedly called Plaintiff "retarded."

21.     Plaintiff believes, and therefore avers, that the other employee involved in the aforementioned altercation was not disciplined in any way for his actions, as described hereinbefore above.

22.     Plaintiff believes, and therefore avers, that he was disciplined by Defendant in retaliation for his good faith complaints of unsafe working conditions and equipment and/or his good faith reports to WPXI, as more fully described hereinbefore above.

23.     On or about August 10, 2025, during Plaintiff's shift, the brake pads fell off of Defendant's truck that Plaintiff had been assigned to operate.

24.     Plaintiff returned the truck to the station and reported the mechanical failure to a foreman that same day.

25.     On or about August 12, 2025, Plaintiff sent a text message about the above-described mechanical failure with a picture of the brake pads to KDKA journalist, Marty Griffin.

4

26. Thereafter, Marty Griffin posted the pictures of the brake pads shared by the Plaintiff to his social media.

27. Shortly thereafter, a supervisor of Defendant, Don Myers ("Myers"), questioned the Plaintiff about the mechanical failure and brake pads of the truck shared by Marty Griffin.

28. During that conversation, Plaintiff disclosed to Mr. Myers that he was the employee that made the reports of unsafe equipment to WPXI and the brake pads to Mary Griffin, as more fully described hereinbefore above.

29. In a letter from Mr. Hornstein dated August 26, 2025, Plaintiff was unlawfully suspended, pending termination, by Defendant for allegedly failing to identify the faulty brake pads prior to operating the vehicle and/or failing to report the faulty brake pads.

30. However, Plaintiff was not responsible for identifying the faulty brake pads prior to operating the vehicle and, as described hereinbefore above, Plaintiff reported the mechanical failure and faulty brake pads to a foreman that same day that the failure occurred.

31. Thereafter, Mr. Hornstein notified Plaintiff that he was terminated from his position with Defendant in a letter dated September 3, 2025.

32. Plaintiff believes, and therefore avers, that he was disciplined and terminated by Defendant in retaliation for his good faith complaints of unsafe working conditions and equipment and/or his reports to WPXI and KDKA-TV on a matter of public concern, as more fully described hereinbefore above.

33. Mr. Hornstein, as the Director of the Department of Public Works, made the final decision to suspend and/or terminate the Plaintiff from his position.

34. Plaintiff believes, and therefore avers, that Mr. Meyers informed the foremen, supervisors, and the Director of the Department of Public Works, Mr. Hornstein, of the

Plaintiff's involvement in the reports of the unsafe working conditions and equipment of the Public Works Department to news outlets as a matter of public concern, as more fully described hereinbefore above.

36. Plaintiff believes, and therefore avers, that Mr. Hornstein made the final decision to suspend and terminate the Plaintiff based on the Plaintiff's safety complaints and/or reports to news outlets on a matter of public concern, as more fully described hereinbefore above.

36. Mr. Hornstein, at all times relevant to this Complaint, was, as the Director of Defendant's Department of Public Works, a policy-maker with final decision-making authority pertaining to the Department.

37. Plaintiff grieved his termination and, on January 28, 2026, was notified that he would be reinstated to his position.

38. As a result of Defendant's actions, Plaintiff has been adversely affected financially, professionally and emotionally.

COUNT I:

PLAINTIFF v. DEFENDANT

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

RETALIATION

39. Plaintiff incorporates by reference Paragraphs 1 through 38 as though fully set forth at length herein.

40. Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant for violations of Plaintiff's constitutional rights under color of law.

6

41.     At all times relevant hereto, pursuant to the First Amendment to the United States Constitution, Plaintiff had the right to be free from retaliation for making complaints of unsafe working conditions and equipment.

42.     Plaintiff's right to be free from retaliation for making complaints of wrongdoing was violated when he was unlawfully suspended and terminated by Defendant.

43.     Plaintiff believes, and therefore avers, that he was suspended and terminated as a direct result of Plaintiff's complaints of wrongdoing, including his reports to news outlets about a matter of public concern, as more fully described hereinbefore above.

44.     Plaintiff believes, and therefore avers, that Mr. Meyers informed the foremen, supervisors, and the Director of the Department of Public Works, Mr. Hornstein, of the Plaintiff's involvement in the reports of the unsafe working conditions and equipment of the Public Works Department to news outlets as a matter of public concern, as more fully described hereinbefore above.

45.     Plaintiff believes, and therefore avers, that Mr. Hornstein made the final decision to suspend and terminate the Plaintiff based on the Plaintiff's safety complaints and/or reports to news outlets on a matter of public concern, as more fully described hereinbefore above.

46.     Mr. Hornstein, at all times relevant to this Complaint, was, as the Director of Defendant's Department of Public Works, a policy-maker with final decision-making authority pertaining to the Department.

47.     The actions of the Defendant deprived Plaintiff of rights guaranteed to him by the First Amendment to the United States Constitution.

48.   As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by Defendant, Plaintiff suffered the following injuries and damages:

    a.   Plaintiff's right under the First Amendment to the United States Constitution to be free from retaliation was violated;

    b.   loss of employment and benefits;

    c.   stress and emotional suffering; and

    d.   economic damages related to any and all consequential costs, including, but not limited to, reasonable attorney's fees and costs of this action.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF v. DEFENDANT

PENNSYLVANIA WHISTLEBLOWER ACT - 43 P.S. §142,1 et. seq.

49.   Plaintiff incorporates by reference Paragraphs 1 through 48 as though fully set forth at length herein.

50.   Plaintiff claims damages for the injuries set forth herein against the Defendant for violations of the Plaintiff's rights under 43 P.S. §142, et. seq.

51.   At all times relevant hereto, pursuant to the Pennsylvania Whistleblower Act, Plaintiff had the right to be free from retaliation for making a good faith report of wrongdoing by the Defendant.

52.     As more fully described hereinbefore above, Plaintiff made several good faith reports of wrongdoing to his supervisors about the unsafe equipment as well as to news outlets about a matter of public concern.

53.     Plaintiff's right to be free from retaliation was violated when he was suspended and terminated from his employment by Defendant, as more fully described hereinbefore above.

54.     Defendant had no adequate justification for its improper, unwarranted and unlawful actions towards the Plaintiff.

55.     Defendant's actions deprived the Plaintiff of rights guaranteed to her by the Pennsylvania Whistleblower's Act.

56.     As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, Plaintiff suffered the following injuries and damages:

a.   Plaintiff's right under the Pennsylvania Whistle Blower's Act to be free from retaliation was violated;

b.   loss of employment and benefits;

c.   stress and emotional suffering; and

d.   economic damages related to any and all consequential costs, including, but not limited to, reasonable attorney's fees and costs of this action.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

9

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
jsansone@joelsansonelaw.com
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
Massimo A. Terzigni, Esquire
PA ID No. 317165
Amanda N. Shields, Esquire
PA ID No. 334025
*Counsel for Plaintiff*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: February 11, 2026